JUDGE BATTS

JS 44C/SDNY
REV. 12/2004

# CIVIL COVER SHEET

'07 CIV 6704

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for use of the Clerk of Court for the purpose of initiating the civil docket sheet.

PLAINTIFFS: Clipper Elite Carriers Ltd.

DEFENDANTS: International Fieo Company

ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER: Raymond A. Connell, Esq. 212-233-0440 132 Nassau Street, New York, N.Y. 10038

ATTORNEYS (IF KNOWN)

CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE): Federal Arbitration Act 9 U.S.C. §206 Petition to Compel Arbitration

Has this or a similar case been previously filed in SDNY at any time? No [X] Yes? [ ] Judge Previously Assigned

If yes, was this case Vol [ ] Invol. [ ] Dismissed. No [ ] Yes [ ] If yes, give date — & Case No.

RECEIVED JUL 25 2007 U.S.D.C. S.D. N.Y. CASHIERS

(PLACE AN [x] IN ONE BOX ONLY) NATURE OF SUIT

ACTIONS UNDER STATUTES

**CONTRACT**

- [ ] 110 INSURANCE
- [X] 120 MARINE
- [ ] 130 MILLER ACT
- [ ] 140 NEGOTIABLE INSTRUMENT
- [ ] 150 RECOVERY OF OVERPAYMENT & ENFORCEMENT OF JUDGMENT
- [ ] 151 MEDICARE ACT
- [ ] 152 RECOVERY OF DEFAULTED STUDENT LOANS (EXCL VETERANS)
- [ ] 153 RECOVERY OF OVERPAYMENT OF VETERAN'S BENEFITS
- [ ] 160 STOCKHOLDERS SUITS
- [ ] 190 OTHER CONTRACT
- [ ] 195 CONTRACT PRODUCT LIABILITY
- [ ] 196 FRANCHISE

**REAL PROPERTY**

- [ ] 210 LAND CONDEMNATION
- [ ] 220 FORECLOSURE
- [ ] 230 RENT LEASE & EJECTMENT
- [ ] 240 TORTS TO LAND
- [ ] 245 TORT PRODUCT LIABILITY
- [ ] 290 ALL OTHER REAL PROPERTY

**TORTS**

PERSONAL INJURY

- [ ] 310 AIRPLANE
- [ ] 315 AIRPLANE PRODUCT LIABILITY
- [ ] 320 ASSAULT, LIBEL & SLANDER
- [ ] 330 FEDERAL EMPLOYERS' LIABILITY
- [ ] 340 MARINE
- [ ] 345 MARINE PRODUCT LIABILITY
- [ ] 350 MOTOR VEHICLE
- [ ] 355 MOTOR VEHICLE PRODUCT LIABILITY
- [ ] 360 OTHER PERSONAL INJURY

PERSONAL INJURY

- [ ] 362 PERSONAL INJURY - MED MALPRACTICE
- [ ] 365 PERSONAL INJURY PRODUCT LIABILITY
- [ ] 368 ASBESTOS PERSONAL INJURY PRODUCT LIABILITY

PERSONAL PROPERTY

- [ ] 370 OTHER FRAUD
- [ ] 371 TRUTH IN LENDING
- [ ] 380 OTHER PERSONAL PROPERTY DAMAGE
- [ ] 385 PROPERTY DAMAGE PRODUCT LIABILITY

**ACTIONS UNDER STATUTES**

CIVIL RIGHTS

- [ ] 441 VOTING
- [ ] 442 EMPLOYMENT
- [ ] 443 HOUSING ACCOMMODATIONS
- [ ] 444 WELFARE
- [ ] 445 AMERICANS WITH DISABILITIES - EMPLOYMENT
- [ ] 446 AMERICANS WITH DISABILITIES -OTHER
- [ ] 440 OTHER CIVIL RIGHTS

PRISONER PETITIONS

- [ ] 510 MOTIONS TO VACATE SENTENCE 20 USC 2255
- [ ] 530 HABEAS CORPUS
- [ ] 535 DEATH PENALTY
- [ ] 540 MANDAMUS & OTHER
- [ ] 550 CIVIL RIGHTS
- [ ] 555 PRISON CONDITION

**FORFEITURE/PENALTY**

- [ ] 610 AGRICULTURE
- [ ] 620 FOOD & DRUG
- [ ] 625 DRUG RELATED SEIZURE OF PROPERTY 21 USC 881
- [ ] 630 LIQUOR LAWS
- [ ] 640 RR & TRUCK
- [ ] 650 AIRLINE REGS
- [ ] 660 OCCUPATIONAL SAFETY/HEALTH
- [ ] 690 OTHER

**LABOR**

- [ ] 710 FAIR LABOR STANDARDS ACT
- [ ] 720 LABOR/MGMT RELATIONS
- [ ] 730 LABOR/MGMT REPORTING & DISCLOSURE ACT
- [ ] 740 RAILWAY LABOR ACT
- [ ] 790 OTHER LABOR LITIGATION
- [ ] 791 EMPL RET INC SECURITY ACT

**BANKRUPTCY**

- [ ] 422 APPEAL 28 USC 158
- [ ] 423 WITHDRAWAL 28 USC 157

PROPERTY RIGHTS

- [ ] 820 COPYRIGHTS
- [ ] 830 PATENT
- [ ] 840 TRADEMARK

SOCIAL SECURITY

- [ ] 861 MIA (1395FF)
- [ ] 862 BLACK LUNG (923)
- [ ] 863 DIWC (405(g))
- [ ] 863 DIWW (405(g))
- [ ] 864 SSID TITLE XVI
- [ ] 865 RSI (405(g))

FEDERAL TAX SUITS

- [ ] 870 TAXES
- [ ] 871 IRS-THIRD PARTY 20 USC 7609

**OTHER STATUTES**

- [ ] 400 STATE REAPPORTIONMENT
- [ ] 410 ANTITRUST
- [ ] 430 BANKS & BANKING
- [ ] 450 COMMERCE/ICC RATES/ETC
- [ ] 460 DEPORTATION
- [ ] 470 RACKETEER INFLUENCED & CORRUPT ORGANIZATION ACT (RICO)
- [ ] 480 CONSUMER CREDIT
- [ ] 490 CABLE/SATELLITE TV
- [ ] 810 SELECTIVE SERVICE
- [ ] 850 SECURITIES/ COMMODITIES/ EXCHANGE
- [ ] 875 CUSTOMER CHALLENGE 12 USC 3410
- [ ] 891 AGRICULTURE ACTS
- [ ] 892 ECONOMIC STABILIZATION ACT
- [ ] 893 ENVIRONMENTAL MATTERS
- [ ] 894 ENERGY ALLOCATION ACT
- [ ] 895 FREEDOM OF INFORMATION ACT
- [ ] 900 APPEAL OF FEE DETERMINATION UNDER EQUAL ACCESS TO JUSTICE
- [ ] 950 CONSTITUTIONALITY OF STATE STATUTES
- [ ] 890 OTHER STATUTORY ACTIONS

*Check if demanded in complaint:*

CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DO YOU CLAIM THIS CASE IS RELATED TO A CIVIL CASE NOW PENDING IN S.D.N.Y.? IF SO, STATE:

DEMAND $______ OTHER ______ JUDGE ______ DOCKET NUMBER ______

*Check YES only if demanded in complaint*
JURY DEMAND: [ ] YES [ ] NO

NOTE: Please submit at the time of filing an explanation of why cases are deemed related.

(SEE REVERSE)

Raymond A. Connell (RC 9071)
132 Nassau Street, Suite 900
New York, New York 10038
Tel.: (212 233-0440
Fax: (212) 619-2340
E-Mail: raconnell@mindspring.com

Attorney for Petitioner

RECEIVED
JUL 25 2007
U.S.D.C. S.D. N.Y.
CASHIERS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JUDGE BATTS

---------------------------------------------------------------X

CLIPPER ELITE CARRIERS, LTD.,

Petitioner

'07 CIV 6704 Civ.

ECF Case

v.

PETITION TO COMPEL ARBITRATION AND FOR APPOINTMENT OF SOLE ARBITRATOR

INTERNATIONAL FREE COMPANY

Respondent.

---------------------------------------------------------------X

Clipper Elite Carriers, Ltd. ("CEC") hereby petitions this Honorable Court for an order directing Respondent, International Free Company ("IFC") to proceed to arbitration of a dispute arising under a marine Booking Note between the parties dated May 4, 2005 ("the Booking Note").

**FIRST:** This is an action for an order pursuant to Federal Arbitration Act ("FAA"), 9 U.S.C. §206; jurisdiction is based upon the district court's jurisdiction in admiralty, 28 U.S.C. § 1333, and under the United Nations Convention on the Recognition and Enforcement of Arbitral Awards dated June 10, 1958, implemented in the United States by Chapter 2 of the FAA, 9 U.S.C. §§201 et seq.

**SECOND:** CEC is a corporation with its principal place of business at Skudehavnsvej 6, DK-2100 Copenhagen, Denmark; it is in the business of ship agency, and, among other things, enters into Booking Notes for its ship owner principals.

**THIRD:** Upon information and belief, IFC is a corporation with its place of business at Shmessani-Essam, Al Aljioni Street Shami Plaza Complex, 1st floor, Amman, Jordan.

**FOURTH:** On May 4, 2005 CEC, as a Carrier, and IFC, as Merchant, entered into a Booking Note for carriage of cargo from Quebec, Canada, and Livorno, Italy, to Aqaba, Jordan on board M.V. CEC MIRAGE. A copy of the Booking Note and its typed Rider are annexed as Exhibit 1.

**FIFTH:** The Booking Note Rider contained the following clauses:

10. Law and jurisdiction.

    Arbitration in New York and U.S. law to apply.

***

17. Demurrage and Detention.

    Demurrage/detention to be charged at U.S. dollars 18,500.00 per day/pro rata.

**SIXTH:** On the voyage, demurrage in the principal amount of $32,759.89 was incurred, and on July 15, 2005, IFC was invoiced accordingly. Exhibit 2.

**SEVENTH:** Despite repeated demands for it to do so, IFC has not paid the outstanding demurrage, or any part of it.

**EIGHTH:** CEC has made repeated attempts to elicit payment from IFC advising that absent payment a petition would be filed in this Court for an order directing IFC proceed to arbitration, and appointing an arbitrator before whom the CEC claim can be heard.

**NINTH:** IFC has continued in its refusal to make payment, and it has not otherwise acknowledged a willingness to put the claim to arbitration.

**TENTH:** The Booking Note is a maritime contract which is commercial within the meaning of FAA §202, 9 U.S.C., and it is not entirely between citizens of the United States; therefore, in accordance with FAA § 206, 9 U.S.C., CEC is entitled to an order directing IFC proceed to arbitration as required by the Booking Note; and, to an order appointing a sole arbitrator to hear and finally decide, the matter.

WHEREFORE, Petitioner CEC requests this Court issue an order directing respondent IFC to proceed forthwith to New York arbitration, appointing a sole arbitrator, and granting CEC such other and further relief as the Court may deem just and proper.

Dated: July 25, 2007
New York, New York

Raymond A. Connell (RC9071)
132 Nassau Street, Suite 900
New York, New York 10038
Tel.: (212 233-0440
Fax: (212) 619-2340
E-Mail: raconnell@mindspring.com

**ONE**

# BOOKING NOTE

Page 2

CLIPPER ELITE CARRIERS
SKUDEHAVNSVEJ 5
DK-2100 COPENHAGEN Ø · DENMARK
PHONE 45 39 13 13 13 · FAX 45 70 10 52 01
E-MAIL DENCHT@CLIPPER-ELITE.COM

Agents (full style and address)
ABNORMAL LOAD SERVICES (INTERNATIONAL) LTD.,
1505 HEDON ROAD, HULL
HU9 5NX UNITED KINGDOM

Carrier (full style and address)
CLIPPER ELITE CARRIERS LTD.,
BAHAMAS, AS AGENTS TO OWNERS

Place and date
MONTREAL, MAY 4TH, 2005

Vessel
M.V. CEC MIRAGE - SEE CL. 12

Merchant* (full style and address)
INTERNATIONAL FEED COMPANY (IFC)
SHMEISANI AMMAN
SHAHIN PLAZA COMPLEX 1ST FLOOR
ALJAHONI ST., AMMAN JORDAN

Time for shipment (about)
MAY 10 - 14, 2005

Port of loading**
QUEBEC, QUEBEC AND LIVORNO, ITALY

Port of discharge
AQABA, JORDON, OR UM QASR, SEE CL. 14

Container No./Seal No./Marks and Numbers (if available) | Number and kind of packages; description of cargo | Gross weight, kg (if available) | Measurement, m³ (if available)

A) EX QUEBEC CITY, ABT. 1,186 CBM / 585 MTS / 36 PCS
PROJECT CARGO, INCLUDING 6 GENERATORS OF ABOUT 82.3 MTS EACH.
B) EX LIVORNO, ITALY, ABT. 6,135 CBM PROJECT CARGO (AS PRESENTED IN PDF FILE 28TH APRIL 2005), PLUS 12 - 15 SHIPPER OWNED FEU, AND IN MERCHANTS OPTION AN ADDITIONAL UPTO 700 CBM PROJECT CARGO, SUBJECT TO MASTERS APPROVAL OF STOWAGE AND STABILITY OF THE ADDITIONAL CARGO.
MERCHANTS GUARANTY ALL CARGO EX LIVORNO IS STACKABLE.

Freight details and charges
SEE CL. 15

Freight (state prepayable or payable at destination)
SEE CL. 15

Daily detention rate
U.S. DLRS 18,500.00/DAY PRO RATA SEE CL. 17.

Special terms, if agreed (including Liner Terms or F.I.O.S. Terms for loading/discharging, see Additional Clauses 4, A or 4, B)

ADDITIONAL CLAUSES 1 THROUGH 21 INCLUSIVE, AS PER ATTACHED RIDER, ARE DEEMED FULLY INCORPORATED IN THIS BOOKING NOTE.

It is hereby agreed that this Contract shall be performed subject to the terms contained on Page 1, 2 and 3 hereof, which shall prevail over any previous arrangements and which shall in turn be superseded (except as to dead freight) by the terms of the Bill of Lading and the special clauses A to D.

| Signature (Merchant) | Signature (Carrier) |
|---|---|
| | |

* As defined hereinafter (Cl. 1)
** (or so near thereunto as the Vessel may safely get and lie always afloat)

# BILL OF LADING TERMS AND CONDITIONS

**1. Definition**
"Merchant" includes the shipper, the receiver, the consignor, the consignee, the holder of the Bill of Lading, the owner of the cargo and any person entitled to possession of the cargo.

**2. Notification**
Any mention in this Bill of Lading of parties to be notified of the arrival of the cargo is solely for the information of the Carrier and failure to give such notification shall not involve the Carrier in any liability nor relieve the Merchant of any obligation hereunder.

**3. Liability for Carriage between Port of Loading and Port of Discharge**
(a) The International convention for the Unification of Certain Rules of Law relating to Bills of Lading signed at Brussels on 25 August 1924 ("the Hague Rules") as amended by the Protocol signed at Brussels on 23 February 1968 ("the Hague-Visby Rules") and as enacted in the country of shipment shall apply to this Contract. When the Hague-Visby Rules are not enacted in the country of the shipment, the corresponding legislation of the country of destination shall apply, irrespective of whether such legislation may only regulate outbound shipments.
When there is no enactment of the Hague-Visby Rules in either the country of shipment or in the country of destination, the Hague-Visby Rules shall apply to this Contract save where the Hague Rules as enacted in the country of shipment or, if no such enactment is in place, the Hague Rules as enacted in the country of destination apply compulsory to this Contract. The Protocol signed at Brussels on 21 December 1979 ("the SDR Protocol 1979") shall apply where the Hague-Visby Rules apply, whether mandatory or by this Contract.
The Carrier shall in no case be responsible for loss of or damage to cargo arising prior to loading, after discharging, or with respect to deck cargo and live animals.
(b) If the Carrier is held liable in respect of delay, consequential loss or damage other than loss of or damage to the cargo, the liability of the Carrier shall be limited to the freight for the carriage covered by this Bill of Lading, or to the limitation amount as determined in sub-clause 3(a), whichever is the lesser.
(c) The aggregate liability of the Carrier and/or any of his servants, agents or independent contractors under this Contract shall, in no circumstances, exceed the limits of liability for the total loss of the cargo under sub-clause 3(a) or, if applicable, the additional clauses A, B, C and D.

**4. Law and Jurisdiction**
Any dispute arising under this Bill of Lading shall be subject to the exclusive jurisdiction of the High Court of Justice, Queen's Bench Division, (the Commercial & Admiralty Court) of United Kingdom, and English Law shall apply except as provided elsewhere herein.

***5. The Scope of Carriage***
The intended carriage shall not be limited to the direct route but shall be deemed to include any proceeding or returning to or stopping or slowing down at or off any ports or places for any reasonable purpose connected with the carriage including bunkering, loading discharging or other cargo operations and maintenance of vessel and crew.

**6. Substitution of Vessel**
The Carrier shall be at liberty to carry the cargo or part thereof to the port of discharge by the said or other vessel or vessels either belonging to the Carrier or others, or by other means of transport, proceeding either directly or indirectly to such port.

**7. Transhipment**
The Carrier shall be at liberty to tranship land and store the cargo either on shore or afloat and reship and forward the same to the port of discharge at Carrier's expense but at Merchant's risk.

**8. Lighterage**
Any lightering in or off ports of loading or ports of discharge to be for the risk and account of the Merchant.

**9. Liability for Pre- and On-Carriage**
When the Carrier arranges pre-carriage of the cargo from a place other than the vessel's port of loading or on-carriage of the cargo to a place other than the vessel's port of discharge, the Carrier shall contract as the Merchant's Agent only and the Carrier shall not be liable for any loss or damage arising during any part of the carriage other than between the port of loading and the port of discharge even though the freight for the whole carriage has been collected by him.

**10. Loading and Discharging**
(a) Loading and discharging of the cargo shall be arranged by the Carrier or his Agent unless otherwise agreed.
(b) The Merchant shall, at his risk and expense, handle and/or store the cargo before loading and after discharging.
(c) Loading and discharging may commence without prior notice.
(d) The Merchant or his Agent shall tender the cargo when the vessel is ready to load and as fast as the vessel can receive, including, if required by the Carrier, outside ordinary working hours notwithstanding any custom of the port. If the Merchant or his Agent fails to tender the cargo when the vessel is ready to load or fails to load as fast as the vessel can receive the cargo, the Carrier shall be relieved of any obligation to load such cargo, the vessel shall be entitled to leave the port without further notice and the Merchant shall be liable to the Carrier for dead freight and/or any overtime charges, losses, costs and expenses incurred by the Carrier.
(e) The Merchant or his Agent shall take delivery of the cargo as fast as the vessel can discharge including, if required by the Carrier, outside ordinary working hours notwithstanding any custom of the port. If the Merchant or his Agent fails to take delivery of the cargo the Carrier's discharging of the cargo shall be deemed fulfilment of the contract of carriage. Should the cargo not be applied for within a reasonable time, the Carrier may sell the same privately or by auction. If the Merchant or his Agent fails to take delivery of the cargo as fast as the Vessel can discharge, the Merchant shall be liable to the Carrier for any overtime charges, losses, costs and expenses incurred by the Carrier.
(f) The Merchant shall accept his reasonable proportion of unidentified loose cargo.

**11. Freight, Charges, Costs, Expenses, Duties, Taxes and Fines**
(a) Freight, whether paid or not, shall be considered as fully earned upon loading and non-returnable in any event. Unless otherwise specified, freight and/or charges under this Contract are payable by the Merchant to the Carrier on demand. Interest at Libor (or its successor) plus 2 per cent shall run from fourteen days after the date when freight and charges are payable.
(b) The Merchant shall be liable for all costs and expenses of fumigation, gathering and sorting loose cargo and weighing on board, repairing damage to and replacing of packing due to excepted causes, and any extra handling of the cargo for any of the aforementioned reasons.
(c) The Merchant shall be liable for any dues, duties, taxes and charges that under any denomination may be levied, inter alia, on the basis of freight, weight or measurement of cargo or tonnage of the vessel.
(d) The Merchant shall be liable for all fines, penalties, costs, expenses and or losses that the Carrier, vessel or cargo may incur through non-observance of Customs House and/or import or export regulations.
(e) The Carrier is entitled in case of incorrect declaration of contents, weights, measurements or value of the cargo to claim double the amount of freight that would have been due if such declaration had been correctly given. For the purpose of ascertaining the actual facts, the Carrier shall have the right to obtain from the Merchant the original invoice and to have the cargo inspected and its contents, weight, measurement or value verified.

**12. Lien**
The Carrier shall have a lien on all cargo for any amount due under this Contract and costs of recovering the same and shall be entitled to sell the cargo privately or by auction to satisfy any claims.

**13. General Average and Salvage**
General Average to be adjusted at any port or place at Carrier's option and to be settled according to the York-Antwerp Rules 1994, or any modification thereof, in respect of all cargo whether carried on or under deck. In the event of accident, danger, damage *or disaster before or after commencement of the voyage* resulting from any cause whatsoever, whether due to negligence or not, for which or for the consequence of which the Carrier is not responsible by statute, contract or otherwise, the Merchant shall contribute with the Carrier in General Average to the payment of any sacrifice, losses or expenses of a General Average nature that may be made or incurred, and shall pay salvage and special charges incurred in respect of the cargo. If a salving vessel is owned or operated by the Carrier, salvage shall be paid for as fully as if the salving vessel or vessels belonged to strangers.

**14. Both-to-Blame Collision Clause**
If the vessel comes into collision with another vessel as a result of the negligence of the other vessel and any act, negligence or default of the Master, Mariner, Pilot or the servants of the Carrier in the navigation or in the management of the vessel, the Merchant will indemnify the Carrier against all loss or liability to the other or non-carrying vessel or her Owner in so far as such loss or liability represents loss of or damage to or any claim whatsoever of the owner of the cargo paid or payable by the other or non-carrying vessel or her Owner to the owner of said cargo and set-off, recouped or recovered by the other or non-carrying vessel or her Owner as part of his claim against the carrying vessel or Carrier. The foregoing provisions shall also apply where the Owner, operator or those in charge of any vessel or vessels or objects other than, or in addition to the colliding vessels or objects are at fault in respect of a collision or contact.

**15. Government Directions, War, Epidemics, Ice, Strikes, etc.**
(a) The Master and the Carrier shall have liberty to comply with any order or directions or recommendations in connection with the transport under this Contract given by any Government or Authority, or anybody acting or purporting to act on behalf of such Government or Authority, or having under the terms of the insurance on the vessel the right to give such orders or directions or recommendations.
(b) Should it appear that the performance of the transport would expose the vessel or any cargo on board to risk of seizure or damage or delay in consequence of war, warlike operations, blockade, riots, civil commotion or piracy, or any person on board to the risk of loss of life or freedom, or that any such risk has increased, the Master may discharge the cargo at port of loading or any other safe and convenient port.
(c) Should it appear that epidemics, quarantine, ice, labour troubles, labour obstructions, strikes, lockouts (whether on board or on shore), difficulties in loading or discharging would prevent the vessel from leaving the port of loading or reaching or entering the port of discharge or there discharging in the usual manner and departing therefrom, all of which safely and without unreasonable delay, the Master may discharge the cargo at the port of loading or any other safe and convenient port.
(d) The discharge, under the provisions of this Clause, of any cargo shall be deemed due fulfilment of the contract of carriage.
(e) If in connection with the exercise of any liberty under this clause any extra expenses are incurred they shall be paid by the Merchant in addition to the freight, together with return freight, if any, and a reasonable compensation for any extra services rendered to the cargo.

**16. Defences and Limits of Liability for the Carrier, Servants and Agents**
(a) It is hereby expressly agreed that no servant or agent of the Carrier (which for the purpose of this Clause includes every independent contractor from time to time employed by the Carrier) shall in any circumstances whatsoever be under any liability whatsoever to the Merchant under this Contract of carriage for any loss, damage or delay of whatsoever kind arising or resulting directly or indirectly from any act, neglect or default on his part while acting in the course of or in connection with his employment.
(b) Without prejudice to the generality of the foregoing provisions in this Clause, every exemption from liability, limitation, condition and liberty herein contained and every right, defence and immunity of whatsoever nature applicable to the Carrier or to which the Carrier is entitled, shall also be available and shall extend to protect every such servant or agent of the Carrier acting as aforesaid.
(c) The Merchant undertakes that no claim shall be made against any servant or agent of the Carrier and, if any claim should nevertheless be made, to indemnify the Carrier against all consequences thereof.
(d) For the purpose of all the foregoing provisions of this clause the Carrier is or shall be deemed to be acting as agent or trustee on behalf of and for the benefit of all persons who might be his servants or agents from time to time and all such persons shall to this extent be or be deemed to be parties to this Contract of carriage.

**17. Stowage**
(a) The Carrier shall have the right to stow by means of containers, trailers, transportable tanks, flats, pallets or similar articles of transport used to consolidate goods.
(b) The Carrier shall have the right to carry containers, trailers, transportable tanks and covered flats, whether stowed by the Carrier or received by him in a stowed condition from the Merchant, on or under deck without notice to the Merchant.

**18. Shipper-Packed Containers, Trailers, Transportable Tanks, Flats, Pallets and similar articles**
The Carrier shall not be responsible for loss of or damage to contents of a container whatsoever when the container has not been filled, packed or stowed by the Carrier. The Merchant shall cover any loss, damage or expense incurred by the Carrier when caused by negligent filling, packing or stowing of the container, or the contents being unsuitable for carriage in a container. The same applies with respect of trailers, tanks, flats, pallets and *other similar articles of transport used to consolidate goods.*

**SPECIAL CLAUSES**

**A. Detention**
In case the Merchant or his assign shall tender the cargo directly to the vessel or in case the cargo will be delivered to the Merchant or his assign directly from the vessel, the cargo is to be tendered when the vessel is ready to load as fast as it can receive, and the cargo is to be received as fast as the vessel can discharge and deliver. Otherwise the Carrier shall be paid detention at the daily rate of USD9,000 (if no other sum is stated on the face of this Bill of Lading). The detention shall also be paid if there is a delay in waiting for berth at or off the port. Should the detention occur due to causes that are beyond the control of the Merchant 24 hrs shall be deducted from the detention. Each Merchant shall be liable towards the Carrier for a proportionate part of the total detention due based upon its total payable freight on the cargo.
No Merchant shall be liable for detention arising only in connection with cargo belonging to other Merchant.

**B. U.S. Trade. Period of Responsibility**
(i) In case the Contract evidenced by this Bill of Lading is subject to the U.S. Carriage of Goods by Sea Act of the United States of America 1936 (U.S. COGSA), then the provisions stated in said Act shall govern before loading, and after discharge and throughout the entire time the cargo is in the Carrier's custody and in which event freight shall be payable on the cargo coming into the Carrier's custody.
(ii) If the U.S. COGSA applies, and unless the nature and value of the cargo has been declared by the shipper before the cargo has been handed over to the Carrier and inserted in this Bill of Lading, the Carrier shall in no event be or become liable for any loss or damage to the cargo in any amount exceeding USD500 per package or customary freight unit.

**C. US Security Clause**
If the vessel calls in the United States, including any US territory, the following provisions shall apply with respect to any applicable regulations or measures:

Unless caused by the Owners' negligence, any delay suffered or time lost in obtaining the entry and exit clearances from the relevant US authorities shall count as time of detention.

Any expenses or additional fees relating to the cargo, even if levied against the vessel, that arise out of security measures imposed at the loading and/or discharging port shall be for the Merchants' account.

**D. Further Additional Clauses**
Further additional clauses as contained on page 3 of the Booking Note are part of this Bill of Lading.

**ADDITIONAL CLAUSES 1 THROUGH 21 INCLUSIVE ALL BEING PART OF THE BOOKING NOTE,** DATED MONTREAL, MAY 4TH, 2005, BETWEEN THE
**MERCHANT: INTERNATIONAL FREE COMPANY,**
**AND THE**
**CARRIER: CLIPPER ELITE CARRIERS LTD., BAHAMAS, AS AGENTS TO THE OWNERS.**

**1. Packing**
Cargo is to be suitably marked and packed for ocean transportation in accordance with International Standards with lifting/lashing points and center of gravity clearly marked.

**2. Lifting Equipment or Gear**
Any required spreaders or lifting frames or slings not already on board the vessel shall be supplied by the Merchant.

**3. Support Equipment and Handling Marks**
Any cradles that may be required to support the cargo shall be supplied by the Merchant.
Cargo to be fitted with suitable lifting lugs or other adequate means of lifting.

Centre of Gravity and lifting points to be clearly indicated.

**4. A ) For Loading in Quebec and Livorno, and discharging Aqaba, Jordon.**
**Loading/Discharging – Liner Terms**
Cargo to be delivered by Merchants for loading directly under hook and the Merchant to receive cargo directly under hook (under hook means within the reach of the vessel's gear). Hooking on charges in Livorno for account of cargo.

At load ports, Vessel to receive cargo as fast as Vessel can load. At discharge port Aqaba, receivers to take cargo from under hook as fast as Vessel can discharge, otherwise detention charges to apply.

Vessel shall only load and discharge directly from/to quay unless otherwise agreed.

Carriers berth at both Quebec and Livorno.

Cargo to be secured to the Master's satisfaction. The time and expense of additional securing required by the Merchant or the Merchant's surveyor beyond that required by the Master shall be for the Merchant's account.

**Or, if Merchant elects free out Um Qsar discharge**

**4. B) For discharging in Um Qsar, Iraq.**
**Discharging – Free Out Terms**
The cargo shall be unloaded from the holds, tallied, unlashed and/or unsecured and taken from the holds and discharged by the Merchant, free of any risk, liability and expense whatsoever to the Owners.

The Merchant shall be responsible for and pay the cost of removing their dunnage after the discharging of the cargo under this Booking Note and time to count until dunnage has been removed.

The Merchant has 4 total days, Fridays/Holidays excluded, unless used, for discharge in Um Qsar, otherwise agreed to demurrage rate to apply.

Time to count at Um Qsar commences upon Vessel tendering NOR, WIPPON, WIBON, WIFPON, WICCON.

The Merchant shall be responsible for damage (beyond ordinary wear and tear) to any part of the vessel caused by Stevedores. Such damage shall be notified as soon as reasonably possible by the Master to the Merchant or the agents and to their Stevedores failing which the Merchant shall not be responsible. The Master shall endeavour to obtain the Stevedores' written acknowledgement of liability.

Any stevedore damage prior to completion of the discharge shall be repaired at the Merchants' expense and time during the vessel's normal dry-docking unless compensation is to be agreed between the parties. Damages affecting the vessel's seaworthiness, cargoworthiness or present class are to be repaired immediately after the occurrence at the Merchants' expense and time. All additional expenses incurred shall be for the account of the Merchant and any time lost shall be for the account of and shall be paid to the Owners by the Merchant at the detention rate stated in this Booking Note.

**5. Stowage**
The Carrier has the option to stow the cargo on or under deck for the Livorno, Italy cargo only. Deck cargo always to be carried at the Merchant's risk and expense and without liability to the Carrier howsoever caused. The Bills of Lading to be claused accordingly. The cargo loading in Quebec City to be underdeck only.

**6. Measurement**
All cargoes to be measured at the extremes for the purpose of calculating the cargo cubic. The Carrier's surveyor may measure and/or weigh the cargo to determine measure and weight.

The Carrier's measure and weight to be used for the purpose of calculating freight.

**7. Misdescription**
In the case of incorrect description of weight and/or dimensions and/or nature of the cargo, the Merchant shall be liable for any additional costs, charges, fines, dues and duties, damage to the vessel and/or to the third parties caused thereby.

Any delay in loading/discharge on account of incorrect description to count at the detention rate stated in this Booking Note.

**8. Excluded Charges**
Any truck unloading/loading costs, terminal handling charges, other terminal charges, wharfage dues, duties and taxes on cargo and/or freight shall always be for the account of the Merchant.

**9. Full or Part Cargo**
This booking will represent a full cargo to the Merchant only.

**10. Law and Jurisdiction**
Arbitration in New York and U.S. Law to apply.

**11. Bill of Lading**
*Carrier's Bill of Lading to be used.*

**12. Vessel**

**m.v. "CEC MIRAGE"**
bahamas flg b99

gt/ nt: 6285/ 3108
mpp tw abt 8947dwt/8,2m dft
ss for 850teus incl. 130 reefers
413 teus x 14t, 390 teus x 16t
371 teus x 18t, 351 teus x 20t, 336 teus x 22t
loa 100,8 bm 20,20
abt. 341.000 cbft gr/bl
1 box ho 62,88 x 15,38 x 11,72m (l/b/h) steelfloored
1 ha 62,88 x 15,38 pontoons
2 cr (port side) each 90t comb 180t
twndeck pontoons placeable as blkheads
gr/co2/elvent 25 a/c
abt. 15kn/abt. 22t ifo380 cst
port cons. 1,2/2,4 go idle/working
all dets abt

**13. N/A**

**14. Discharge Port**
Carrier's berth Aqaba, Jordon, or in Merchants option, 1 good/safe berth AAAA Um Qasr, Iraq.

Merchant to declare to the Carrier the discharge port 6 days after sailing Quebec City.

**15. Freight**
Freight is always based on two load ports and 1 discharge port.

Freight basis Aqaba port discharge: U.S. dollars 1,085,000.00 lumpsum, liner in from under ships tackle Quebec and liner in from hook Livorno, with hooking on charges Livorno for account of cargo / liner out under ships tackle. Any cargo loaded in Quebec in excess of 1,186 cbm to be rated at U.S. dlrs 225.00 w/m.

Or, in Merchants option:

Freight basis Um Qasr discharge: U.S. dollars 1,310,000.00 lumpsum hook Livorno, with hooking on charges Livorno for account of cargo / free out UM Qsar.

**16. Freight Payment**
Fifty ( 50 ) percent of total freight to be paid latest 6 banking acol days after sailing Quebec City. Balance of fifty ( 50 ) percent of total freight to be paid latest 5 banking days after sailing Livorno, and freight payment(s) to be always made prior signing/releasing bills of ladings, directly into Carrier's account. Freight deemed earned on loading cargo, discountless, non-returnable, ship and / or cargo lost or not lost.
Any taxes/dues/tolls/fees/wharfage(s) on freight or cargo for account of Merchant. Same calculated on Vessel for account of Carrier.

**17. Demurrage and Detention**
Demurrage/detention to be charged at U.S. dollars 18,500.00 per day / pro rata.

*Carrier to pay dispatch to the Merchant at the rate of ½ of the demurrage rate for all time saved at* discharge port Um Qsar.

**18. War Risk**
Additional War Risk insurance & crew bonus, if any, for account of Merchant.

**19. Liner Out Option – UM Qasr**

The Carrier to present to the Merchant the Liner Out option for Um Qasr by providing the additional costs and terms to the Merchant, as soon as possible, for the Merchant's review and decision.

**20. Agents**
Carrier's agent's at all load and discharge ports.

**21. Other**
Carrier's I.S.P.S & VOYWAR 04 clauses to be deemed part of this booking note.



Montreal, May 17th, 2005

## ADDENDUM NO. 1

**To the Booking Note, Dated, Montreal, May 4th, 2005**
**Between**
**Merchants: Internatinal Free Company., of Amman, Jordan**
**And**
**Clipper Elite Carriers Ltd., Bahamas, as Agents to the Owners**

It is herewith agreed between the Merchants and the Owners that the following amendments and additions have been agreed upon;

Clause 4 (b), 3rd paragraph, of the Rider Clauses now reads: " The Merchant has 4 total days, Fridays/holidays excluded, unless used, for discharge in Umm Qasr, otherwise agreed to demurrage rate to apply."

Amended to Read:

Clause 4 (b), 3rd par paragraph, of the Rider Clauses is amended to read: " The Merchant has 4 total days, Fridays/holidays excluded, even if used, for discharge in Umm Qasr, otherwise agreed to demurrage rate to apply."

And, in addition, the following new clause is deemed fully incorporated in the governing booking note:

The Merchant agrees to pay the Carrier's estimated War Risk Insurance together with the balance of freight due, as per booking note, after the Vessel sails Livorno, Italy. Any adjustments to the Carrier's War Risk Insurance as invoiced by the Carrier's insurance company to be paid, or refunded as the case may be, upon presentation by the Carrier to the Merchant of a copy of the final War Risk Insurance invoice.

All other terms, conditions and exceptions of the governing Booking Note, dated May 4th, 2005 to remain the same.

On behalf of Merchants,

On behalf of Owners,

**TWO**

# CLIPPER ELITE CARRIERS LT



Clipper Elite Carriers A/S
Harbour House, Sundkrogsgade 21
2100 Copenhagen . Denmark
Phone: +45 49 11 80 00
Fax: +45 49 11 80 01

International Free Company

Shami Plaza Complex, 1st Floor
SHMASNI AMMAM, SHMASNI AMMAM
Jordan

COPY FOR
ECONOMY FILE

Date 15 July 2005
Inv no SI00471

## Invoice

**m.v. CEC Mirage - C/P 4 May 2005**

| | USD |
|---|---|
| Demurrage at UMM QASR | 32.759,80 |
| **Balance In Owners favour** | **32.759,80** |

E.& O.E.

# TIME SHEET

| | | | |
|---|---|---|---|
| **Vessel:** | CEC Mirage | **Discharging port** | UMM QASR |
| **Fixture No.:** | F000056 | **Cargo quantity** | 6.135,0000 Lumpsum |
| **Client:** | International Free Company | **Laytime No.** | LA00029 |

**Statement of facts**

**Terms of charter party dated 4. May 2005**

| | | | | | |
|---|---|---|---|---|---|
| Vessel arrived anchorage | Fri | 10-06-05 | 7:20 | Non-Reversible laytime | |
| Notice tendered | Fri | 10-06-05 | 7:20 | Working Time Saved | |
| Vessel left anchorage | Sat | 11-06-05 | 6:00 | | |
| Vessel berthed | Sat | 11-06-05 | 21:15 | Demurrage rate | 18.500,00 |
| Discharging commenced | Mon | 13-06-05 | 11:20 | Despatch rate | 9.250,00 |
| Discharging completed | Thu | 16-06-05 | 18:30 | Discharging rate | 4 Days |
| **Laytime commenced** | **Fri** | **10-06-05** | **7:20** | Fridays and Holidays excl unless used | |

| Day | Date | From | To | Remarks | % | Time used HH:MM | Total time DD | Total time HH:MM |
|---|---|---|---|---|---|---|---|---|
| Fri | 10-06-05 | 7:20 | 24:00 | Fridays and Holidays excl | 0,00 | 0:00 | 0 | 0:00 |
| Sat | 11-06-05 | 0:00 | 24:00 | | 100,00 | 24:00 | 1 | 0:00 |
| Sun | 12-06-05 | 0:00 | 24:00 | | 100,00 | 24:00 | 2 | 0:00 |
| Mon | 13-06-05 | 0:00 | 24:00 | | 100,00 | 24:00 | 3 | 0:00 |
| Tue | 14-06-05 | 0:00 | 24:00 | Laytime expires | 100,00 | 24:00 | 4 | 0:00 |
| Wed | 15-06-05 | 0:00 | 24:00 | On demurrage | 100,00 | 24:00 | 5 | 0:00 |
| Thu | 16-06-05 | 0:00 | 18:30 | | 100,00 | 18:30 | 5 | 18:30 |

| | | |
|---|---|---|
| Time allowed | (4,0000 Days) | 4 day(s) 0 hour(s) 00 minute(s) |
| Time used | (5,7708 Days) | 5 day(s) 18 hour(s) 30 minute(s) |
| Time lost | (1,7708 Days) | 1 day(s) 18 hour(s) 30 minute(s) |

**Demurrage 1,7708 days at 18.500 per day . . . . . . .** **32.759,80**